# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 7, 2013

No. 12-10525

Lyle W. Cayce
Clerk

THOMAS KENNETH ABRAHAM, doing business as Paddle Tramps
Manufacturing Company,

Plaintiff - Appellant Cross-Appellee

v.

ALPHA CHI OMEGA; ALPHA CHI OMEGA FRATERNITY
INCORPORATED; ALPHA DELTA PI; ALPHA DELTA SORORITY
CORPORATION; ALPHA GAMMA DELTA; ET AL,

Defendants - Appellees Cross-Appellants

Appeals from the United States District Court
for the Northern District of Texas

Before JONES, GARZA, and PRADO, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The original opinion in this case was issued by the panel on December 6, 2012. No member of the panel nor judge in regular active service of the court having requested that the court be polled on rehearing en banc (FED. R. APP. P. 35 and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED.

Because this panel has revised Part IV.A of their prior opinion, the petition for panel rehearing is GRANTED in part. The following is substituted therefor. In all other respects, the petition for panel rehearing is DENIED:

No. 12-10525

Thomas Kenneth Abraham ("Abraham"), doing business as Paddle Tramps Manufacturing Company ("Paddle Tramps"), appeals the district court's order granting a partial preliminary injunction against his use of trademarks belonging to 32 fraternity and sorority organizations (the "Greek Organizations"). The Greek Organizations cross-appeal the limitation on the injunction. We AFFIRM.

**I**

Abraham founded Paddle Tramps in Lubbock, Texas in 1961 as a company that manufactured wooden paddles and decorations for fraternity and sorority members. Paddle Tramps has always sold products bearing the names of fraternities and sororities and has always used the names of fraternities and sororities to advertise its products.

Abraham began selling the paddles by showing samples and taking orders at fraternity and sorority house visits. He created the ordered products by carving Greek letters and affixing them and other decorations onto wooden paddles. By the late 1960s, Abraham began wholesaling the component parts of paddles, such as wooden Greek and Roman letters and wood-carved crests, to college bookstores or craft stores for customers to buy and assemble. Also in the late 1960s, Abraham began distributing catalogues with fraternity and sorority names and crests to advertise his products.

Abraham invested heavily in equipment, advertising, and employees. He had to completely rebuild his business three times—once after a fire in 1966, then after a tornado in 1970, and still again after another fire in Paddle Tramps's manufacturing plant in 1980.

No. 12-10525

In 1997, Abraham established a website for Paddle Tramps. The website initially only advertised Paddle Tramps's products, then in 2001 it began allowing customers to purchase items online. At all times the website displayed fraternity and sorority names, as well as Paddle Tramps's products that reproduced fraternity and sorority crests. Abraham testified Paddle Tramps continued to sell almost exactly the same products it had been selling in the 1960s after the creation of the website in 1997.

In 1990, 29 years after Abraham founded Paddle Tramps, the Greek Organizations contacted him for the first time about licensing. The entity that contacted him was called Greek Properties, and the letter invited Abraham to join their group. Abraham did not respond. Greek Properties followed up with another letter in 1991. It attached an application for admission into Greek Properties, which required Abraham to sign a statement promising not use any Greek Properties's member organizations's marks or terminology without written consent. Again, Abraham did not respond. The following year, Greek Properties sent Abraham a brochure, but never again attempted to get him to join.

In 1995, Dan Shaver ("Shaver") sent a letter to Abraham on behalf of Sigma Chi threatening to sue Paddle Tramps for trademark infringement. Abraham's son Kyle responded, saying Paddle Tramps was not interested in licensing Sigma Chi's marks after continuously using Sigma Chi's name and crest on its products for 34 years without complaint. Over the next 13 years, Shaver periodically sent additional letters to Abraham on behalf of an entity called Affinity Marketing Consultants. Affinity Marketing Consultants represented about 70 fraternities and sororities. These letters sometimes invited

3

No. 12-10525

Paddle Tramps to join a fraternity or sorority's licensing program, sometimes ordered Paddle Tramps to cease and desist, and sometimes threatened to sue. Abraham either ignored these letters or responded by stating he refused to enter into a licensing agreement.

In December 2007, the 32 Greek Organizations in this litigation, represented by Affinity Marketing Consultants and Shaver, sued Abraham for patent infringement and unfair competition in the Southern District of Florida. The Florida district court dismissed the suit for improper venue. Abraham then sued the Greek Organizations in April 2008 in the instant litigation for a declaratory judgment that he was not infringing on their marks. The Greek Organization asserted counterclaims for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq., and for unfair competition and trademark dilution under Texas state-law claims. They sought monetary and injunctive relief.

Abraham moved for summary judgment on his affirmative defenses of laches and acquiescence, and the Greek Organizations moved for summary judgment on the liability portion of their substantive claims, injunctive relief, and an accounting. The district court granted the Greek Organizations's motion in part, concluding Abraham infringed the Greek Organizations's names, insignia, and symbols, creating a likelihood of confusion among the public in violation of the Lanham Act and Texas's unfair competition law. Further, the district court concluded Abraham diluted the Greek Organizations's marks in violation of Texas's trademark dilution law. Abraham does not contest these determinations on appeal. The court denied Abraham's motion for summary judgment on his affirmative defenses of laches and acquiescence, denied the

4

No. 12-10525

Greek Organizations's counter-defense of unclean hands, and ordered a trial on those issues.

At the end of the evidence presented at that trial, the district court denied the parties's motions for judgment as a matter of law. The jury returned a special verdict finding: (1) Abraham proved his laches defense; (2) Abraham proved his acquiescence defense with respect to one of the Greek Organizations (Pi Kappa Alpha); and (3) the Greek Organizations did not prove their unclean hands counter-defense.

Abraham moved for judgment on the verdict, and the Greek Organizations renewed their motion for judgment as a matter of law. In an unorthodox point of error, the Greek Organizations collapsed an improper jury instruction claim with a sufficiency of the evidence claim, arguing the jury was improperly instructed on unclean hands and laches and no properly instructed jury would have had a legally sufficient evidentiary basis to find Abraham established his laches defense or had clean hands. The Greek Organizations's motion also asserted the issue of acquiescence should not have gone to the jury, and asked the court to enter a permanent injunction barring Abraham's future use of their marks. The district court denied the Greek Organizations's renewed motion, finding the jury was properly instructed, the issue of acquiescence was properly submitted to the jury, and there was sufficient evidence to support Abraham's laches defense and the jury's finding of clean hands. The court granted Abraham's motion for judgment on the verdict, finding his laches defense precluded the monetary relief sought by the Greek Organizations.

The court further determined laches did not bar entry of a permanent injunction on Abraham's future use of the Greek Organizations's marks. The

No. 12-10525

court permanently enjoined Abraham from some future uses of the Greek Organizations's marks, concluding the "degree of prejudice" such an injunction would impose on Abraham was not significant enough to bar injunctive relief. The injunction prevents Abraham from selling or using in his advertising three categories of the Greek Organizations's marks: (1) the Greek letter combinations associated with the parties to this lawsuit; (2) the full names or nicknames associated with the parties to this lawsuit; and (3) any crest, coat of arms, seal, flag, badge, emblem, or slogan identifiable with any of the parties to this lawsuit, including copies of the Greek Organizations's crests Abraham carved out of wood.

The injunction allows Abraham to sell and include in his advertising decals of the Greek Organizations's crests he purchased wholesale from licenced vendors, as well as what Abraham calls the "double raised crest backing." This crest backing is carved in the shape of a given Greek Organization's crest, upon which Paddle Tramps affixes a licenced decal.

Abraham timely appealed the district court's entry of a permanent injunction based on the jury finding that he established a laches affirmative defense, and because the laches here were particularly long, unreasonable, and inexcusable. The Greek Organizations timely cross-appealed the district court's rejection of their motion for judgment as a matter of law, asserting the jury instructions were improper and the jury findings on laches and unclean hands are unsupported by the evidence. They also appeal the scope of the injunction, asserting Abraham should have been enjoined from continuing to sell the double raised crest backings in the shape of the Greek Organizations's crests.

No. 12-10525

## II

We review jury instructions for abuse of discretion. *Garriott v. NCsoft Corp.*, 661 F.3d 243, 247 (5th Cir. 2011). "A challenge to jury instructions must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. . . . Even if the challenger proves the instructions misguided the jury, we reverse only if the erroneous instruction affected the outcome of the case." *Price v. Rosiek Const. Co.*, 509 F.3d 704, 708 (5th Cir. 2007).

We review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standards as the district court. *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 392–93 (5th Cir. 2012). Judgment as a matter of law is proper when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). "This will only occur if the facts and inferences point so strongly and overwhelmingly in the movant's favor that jurors could not reasonably have reached a contrary verdict." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (internal quotation marks omitted). We "credit the non-moving [party's] evidence and disregard all evidence favorable to [the moving party] that the jury is not required to believe. After a jury trial, [the] standard of review is especially deferential." *Id.* (internal quotation marks and citations omitted).

Lastly, we review the district court's grant of injunctive relief for an abuse of discretion. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 334 (5th Cir. 2008). "An abuse of discretion automatically inheres in an injunctive decree if the trial court misinterpreted applicable law. . . . As with injunctive relief generally, an equitable remedy for trademark infringement should be no broader

No. 12-10525

than necessary to prevent the deception." *Westchester Media et al. v. PRL USA Holdings, et al.*, 214 F.3d 658, 671 (2000) (citations omitted).

## III

The Greek Organizations appeal the entirety of the jury's verdict. First, they assert the district court improperly instructed the jury on laches and unclean hands. Second, they assert the jury's findings on laches and unclean hands are unsupported by sufficient evidence.

## A

A laches defense cannot be asserted by a party with unclean hands because it is equitable. *See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008). "A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." *Id.*

The district court instructed the jury on laches as follows:

> To prevail on their claim that Mr. Abraham may not assert the laches or acquiescence defenses because he has unclean hands, the Greek Organizations must prove by a preponderance of the evidence that Mr. Abraham knowingly intended to use the Greek Organizations' marks for the purpose of deriving benefit from the Greek Organizations' goodwill.

> Unclean hands may be found only where the unlicensed user "subjectively and knowingly" intended to cause mistake or to confuse or deceive buyers. Mere awareness of a trademark owner's claim to the same mark does not amount to having unclean hands nor establishes bad intent necessary to preclude laches and acquiescence defenses. The owner of the mark must demonstrate that at the time the unlicensed user began

8

> using the marks or sometime thereafter, said unlicensed user knowingly and intentionally did so with the bad faith intent to benefit from or capitalize on the mark owner's goodwill.

In this instruction, the district court used language from *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985). In *Conan Properties*, we held:

> [T]he critical issue is whether [the infringer] was an intentional infringer and therefore lacked the clean hands necessary to assert the equitable defenses of laches and acquiescence. . . . Passing off [products as endorsed by the trademark owner] may be found only where the defendant "subjectively and knowingly" intended to confuse buyers. This court has recognized that a defendant's mere awareness of a plaintiff's claim to the same mark neither amounts to passing off nor establishes the bad intent necessary to preclude the availability of the laches defense. The plaintiff's burden, therefore, is heavy. To foreclose the laches and acquiescence defenses, the plaintiff must offer something more than mere objective evidence to demonstrate that the defendant employed the allegedly infringing mark with the wrongful intent of capitalizing on its goodwill.

*Id.* (quoting 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:1, §31:2 (1st ed. 1973)) (internal citations omitted).

The Greek Organizations assert the jury instruction was erroneous for two reasons. First, they assert error in the explanation of "confusion" or "deception." Quoting *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004, 1012 (5th Cir. 1975) ("*Professional Hockey*"), the Greek Organizations assert the "confusion or deceit requirement is met by the fact that the defendant duplicated the protected trademarks and sold them

to the public knowing that the public would identify them as being the [trademark holder's] trademarks." *Id*. *Professional Hockey*, however, is not an unclean hands case. This quotation appears in *Professional Hockey*'s discussion of the fifth element in a trademark infringement claim under 15 U.S.C. § 1114, which requires the infringing use to likely cause confusion, to cause mistake, or to deceive. *Id*. If the confusion or deception required to make out a case of trademark infringement were the same as the confusion or deception required to make out an unclean hands counter-defense, then every trademark infringer would necessarily have unclean hands. That is not so.

Second, the Greek Organizations assert the district court's instruction misguides the jury by stating "mere awareness" of a trademark owner's claim to the mark is not enough to establish unclean hands. The correct instruction, according to the Greek Organizations, comes from the second footnote in *Conan Properties*, 752 F.2d at 151 n.2: the pertinent confusion is to be inferred or *presumed* if Abraham "intended to derive benefit from or capitalize" on the marks. Again, the Greek Organizations confuse the elements of a trademark infringement claim with the showing necessary to prove unclean hands. The footnote in *Conan Properties* states "knowledge" of a trademark owner's claim to the mark "may give rise to a presumption that the defendant intended to cause public confusion as to the source or sponsorship of the product or service." *Id*. at 151 n.2. The very next sentence makes clear that such a presumption does not arise in the unclean hands analysis: "The same showing, however, does not give rise to a presumption that the defendant intended to appropriate the plaintiff's goodwill from its use of the allegedly infringing mark." *Id*.; *see Smack Apparel*, 550 F.3d at 490. The district court did not abuse its discretion in

No. 12-10525

instructing the jury that to prove unclean hands, the Greek Organizations had to show Abraham knowingly and intentionally infringed upon the marks with the bad faith intent to benefit from or capitalize on the Greek Organizations's goodwill by confusing or deceiving buyers.

The Greek Organizations next assert the jury's rejection of their unclean hands counter-defense is unsupported by the evidence because Abraham stated at trial that his infringing products "drive the sales" of Paddle Tramps's other products. According to the Greek Organizations, this admission by Abraham demonstrates he intentionally capitalized on the Greek Organizations's goodwill. In *Smack Apparel*, we affirmed the trial court's finding of unclean hands where the infringing apparel manufacturer "admitted that it intentionally incorporated the [trademark owner] Universities' color schemes and other indicia in order to specifically call the Universities to the public's mind, thus deriving a benefit from the Universities' reputation." *Smack Apparel*, 550 F.3d at 490.

This case is distinguishable from *Smack Apparel*. Abraham introduced evidence tending to show a lack of bad faith: Paddle Tramps helped to create the market for fraternity and sorority paddles decades before the Greek Organizations had a licencing program, Abraham's intent was to service fraternities and sororities, not to capitalize on their goodwill in bad faith, the products are virtually the same today as they were in the 1960s, and Paddle Tramps never passed itself off as being sponsored or endorsed by the Greek Organizations. Given our "especially deferential" standard of review for evidence after a jury trial, *Brown*, 675 F.3d at 477, we hold this evidence is legally sufficient to allow a jury to find for Abraham on the unclean hands issue because it supports a showing of Abraham's lack of bad faith.

11

No. 12-10525

## B

"Laches is an inexcusable delay that results in prejudice to the defendant." *Smack Apparel*, 550 F.3d at 489. Laches has three elements: "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Id.* at 490. The Greek Organizations assert the jury was improperly instructed on the "lack of excuse" and "undue prejudice" elements, and there was insufficient evidence to support the jury's special verdict finding each of the elements satisfied.

The Greek Organizations first assert the jury instruction on the lack of excuse element was deficient because it did not explain that a trademark owner is excused from delay in taking action against de minimis infringements. The Greek Organizations rely on *Conan Properties*, a number of cases from our sister circuits, and a leading trademark and unfair competition treatise. They rely on a footnote in *Conan Properties* which states, "Since incidental and isolated infringement may be difficult to detect and cost ineffective to halt, a plaintiff may make a conscious business decision to prosecute only those defendants who pose a threat to its mark." *Conan Properties*, 752 F.2d at 153 n.4. This sentence, however, is in *Conan Properties*'s discussion of whether the laches barred a permanent injunction, not in a discussion of whether laches applies. *Conan Properties* held laches do not necessarily bar permanent injunctive relief, *id.* at 153, and this footnote provides additional justification for that rule: it might not make economic sense for a trademark owner to go after de minimis infringers, but if a de minimis infringer begins to diminish the value of the mark more in the future, the trademark holder should be entitled to a permanent injunction notwithstanding the applicability of laches. *Id.* at 153 n.4. The *Conan*

12

No. 12-10525

*Properties* discussion of de minimis infringement does not speak to whether laches applies.

The Greek Organizations cite other sources that provide support for the doctrine of progressive encroachment, "which allows a trademark owner to 'tolerate de minimis or low-level infringements' and still have the right to 'act promptly when a junior user either gradually edges into causing serious harm or suddenly expands or changes its mark.'" *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 823 (7th Cir. 2002) (quoting 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:21 (4th ed. 2001)).   The district court did, however, instruct the jury on the doctrine of progressive encroachment over Abraham's objection.  The district court instructed the jury:

> Under the doctrine of progressive encroachment, the trademark owner's delay is excused where the unlicensed user begins to use the trademark in the market, and later modifies or intensifies its use of the trademark to the effect that the unlicensed user significantly impacts the trademark owner's good will and business reputation, so that the unlicensed user is placed more squarely in competition with the trademark owner. *The mark owner need not sue until the harm from the unlicensed user's use of the mark looms large.*  It is therefore the significant increase in the scope of the unlicensed user's business, not reliance on the same general business model, that supports the doctrine of progressive encroachment.

(emphasis added).  In light of this instruction—which the Greek Organizations do not appeal—and the Greek Organizations's misplaced reliance on *Conan Properties*, we hold the district court did not abuse its discretion in its instruction to the jury on the lack-of-excuse element of laches.

No. 12-10525

The Greek Organizations assert the evidence was insufficient to support the jury's finding that they lacked an excuse for their delay in bringing suit because at all times Abraham's infringement was de minimis. Just under 2.5% of Paddle Tramps's revenue derives from the sale of infringing products, and the average royalty owed by Paddle Tramps to each of the Greek Organizations for the past few years of infringing conduct was only $140.78 annually. There is, however, evidence in the record to support the jury's finding. The creation of Paddle Tramps's website in 1997 and the sale of infringing products directly from that website in 2001 could be considered "an increase in the scope of the unlicensed user's business," which the district court correctly instructed could support a finding of progressive encroachment. The jury could have determined that the intervening six years between 2001 and 2007, when the Greek Organizations brought suit, is itself an unexcused delay sufficient to satisfy the lack-of-excuse element of laches. *See Conan Properties*, 752 F.2d at 149 (finding by jury that five-and-a-half-year unexcused delay supported finding of laches). The jury, therefore, had a legally sufficient evidentiary basis for concluding that the lack-of-excuse element was satisfied.

The Greek Organizations next assert the district court's jury instruction on the undue influence element of laches confused the test for acquiescence with the test for laches. The district court, however, correctly instructed the jury that the elements of laches are (1) delay, (2) lack of excuse, and (3) undue prejudice and the elements of acquiescence are (1) assurances, (2) reliance, and (3) undue prejudice. Though the instructions on undue prejudice for each equitable defense are similar, they are not identical. On the undue prejudice element of laches, the district court instructed the jury:

No. 12-10525

> An unlicensed user is unduly prejudiced when, in reliance on the trademark owner's unexcused delay in filing suit, he or she makes major business investments or expansions that depend on the use of the marks; these investments and expansions would suffer appreciable loss if the marks were enforced; and this loss would not have been incurred had the trademark owner enforced his rights earlier. The amount of prejudice suffered by the unlicensed user in a given case may vary with the length of the delay; that is, the longer the period of delay, the more likely it is that undue prejudice has occurred. The period of delay begins when the trademark owner knew or should have known of the unlicensed user's use of the marks and ends when the trademark owner files suit against the unlicensed user. Therefore, to determine whether Mr. Abraham has been unduly prejudiced by the Greek Organizations' delay, you must consider what business investments and expansions Mr. Abraham made between the time the Greek Organizations knew or should have known of his use of their marks and the time they filed suit against him.

The Greek Organizations contend the instructions should have asked whether an injunction would "destroy[] the investment in the capital," quoting *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998)). In *Elvis Presley*, we held no undue prejudice was shown where changing the name of the infringer defendant's nightclub would not have destroyed the investment of capital in that nightclub. *Elvis Presley*, 141 F.3d at 206. Even the Greek Organizations, however, do not assert that destruction of the investment of capital is the definitive test. Rather, they assert the question should be whether the infringer would suffer losses that would have been avoided had the

15

No. 12-10525

trademark owner not delayed.  This test is in line with the discussion of undue prejudice in a leading treatise:

> [P]rejudice encompasses actions by the defendant that it would not have taken or consequences it would not have suffered had the plaintiff brought suit promptly. . . . Laches is a good defense if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark.

6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:12 (4th ed. 2001). The district court did not abuse its discretion in its jury instruction on undue prejudice as its instruction tracks this test.

The Greek Organizations also contend the jury's finding of undue prejudice is not supported by the evidence.  This is a close question.  The Greek Organizations compare this case to a case from a sister circuit, *University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040 (3d Cir. 1982).  The University of Pittsburgh sued Champion for manufacturing shirts and other apparel on which Champion printed the university's logo and other marks. *Id.* at 1043.  The Third Circuit held Champion did not suffer undue prejudice due to the university's delay in bringing suit:

> Pitt is only one of approximately 10,000 schools and colleges whose names or designs [Champion] imprint[s] on soft goods. . . . Champion built its physical plant, art department and sales force in order to design, produce and market soft goods with marks and designs of every kind. . . .  The only tangible investments in Pitt's designs, per se, are the screen stencils used for imprinting the designs—which are produced in quantity, used for no more than a few dozen shirts, and then destroyed.

No. 12-10525

*Id.* at 1048. The Greek Organizations assert that like in *Champion Products*, the infringing items sold by Paddle Tramps make up a small percentage of Paddle Tramps's overall sales, and the investments in equipment made by Paddle Tramps can be used—and indeed are mostly used—for producing non-infringing products. Thus, they assert Paddle Tramps would suffer no undue prejudice if it were enjoined from selling infringing products.

Though this case is similar to *Champion Products*, Paddle Tramps ultimately marshaled legally sufficient evidence at trial to support the jury's finding of undue prejudice. Abraham testified he rebuilt the business three times—twice after fires and once after a tornado—and he would not have done so had he known the Greek Organizations would later sue him to enforce their trademarks. The rebuilding required investments of millions of dollars into equipment, advertising, and employee salaries. In addition, Abraham testified the infringing products, while perhaps a small percentage of his total sales, drive the sale of his non-infringing products because without them customers might choose to purchase the component parts to their paddles somewhere else. This is sufficient for a jury to find the sale of the infringing products would have a greater effect on total sales than in *Champion Products*. Therefore, the test for undue prejudice is met: had the Greek Organizations brought suit earlier, Abraham may not have rebuilt his business after the fires or tornado and may not have invested millions of dollars into the business. Furthermore, Abraham relies on the small percentage of sales of infringing products to drive his other sales. Therefore, the district court correctly denied the Greek Organizations's motion for judgment as a matter of law.

No. 12-10525

## IV

Abraham challenges the injunction entered by the district court.  He asserts injunctive relief is unavailable where a trademark owner's laches was long, unreasonable, and inexcusable.  He asserts he should be permitted to continue selling his infringing products and using the Greek Organizations's names, insignia, and symbols in advertisements. The Greek Organizations also challenge the injunction entered by the district court, asserting it was not sufficiently comprehensive by permitting the sale of Abraham's double raised crest backings.

## A

"A finding of laches alone ordinarily will not bar . . . injunctive relief, although it typically will foreclose a demand for an accounting or damages." *Conan Properties*, 752 F.2d at 152.  This is because "courts construe [a trademark owner's] unreasonable delay to imply consent to the [infringer's] conduct, which amounts to nothing more than a revocable license; the license is revoked once the plaintiff objects to the [infringer's] infringement." *Id.* (citing *Menendez v. Holt*, 128 U.S. 514 (1888)).  We have stated, "There is no doubt that laches may defeat claims for injunctive relief as well as claims for an accounting." *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 n.14 (5th Cir. 1982).

In *Conan Properties*, we reversed an injunction barring infringing restaurant owners from continuing to use the name "Conans" for their restaurants in the Austin, Texas area. *Conan Properties*, 752 F.2d at 152. We stated, "The jury's affirmative finding of acquiescence establishes the reliance necessary to preclude the issuance of an injunction." *Id.*  We upheld the

18

No. 12-10525

injunction barring the use of the infringing mark *outside* the Austin geographic area:

> An injunction against future infringement in a particular locale when laches and acquiescence have been found, as in this case, is properly denied if the plaintiff's delay or other conduct either induced reliance on the defendant's part or will result in substantial prejudice to the defendant if the plaintiff is permitted to enforce its rights in the trademark. Whether phrased as 'reliance' or 'prejudice', the effect is the same—the defendant has done something it otherwise would not have done absent the plaintiff's conduct. The result is different, however, when the asserted future infringement would occur in a geographical area other than the one in which the plaintiff waived its right to protect its mark. In the new geographical area where the defendant has not yet expanded its business, the defendant is hard pressed to demonstrate how it could have relied to its detriment upon the plaintiff's inactivity or other conduct. Stated simply, the defendant at best can show only that the plaintiff acquiesced or unreasonably delayed in protecting its mark in the local area. . . . In this case we conclude that Conans has made sufficient showings of reliance and prejudice in the Austin area to justify denying an injunction, but has failed to offer any evidence, let alone carry its burden of demonstrating that it would be prejudiced if barred from infringing on [the plaintiff's] mark in any area other than Austin.

*Id.* at 153. Therefore, a finding of laches or acquiescence may bar injunctive relief if the trademark owner conducted itself in a way that induced the

No. 12-10525

infringer's reliance or if an injunction would result in "substantial prejudice" to the infringer. *Id.*[1]

The district court found that "courts consistently focus on the degree of prejudice the defendant would suffer in the event the infringing use is enjoined," citing *Conan Properties*, 752 F.2d at 153. *Champion Products* held the injunction "must depend upon the degree to which Pitt's delay may have prejudiced Champion." *Champion Products*, 686 F.2d at 1046. The district court's "degree of prejudice to the infringer" test is very close to both this *Champion Products* test and *Conan Properties*'s "substantial prejudice" test.

Abraham objects to the district court's "degree of prejudice" test because he claims it puts the burden on him to show why an injunction should not issue on particular infringing conduct. It is well-established that the party seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted). The district court's test did not erroneously place the burden on Abraham; rather, it correctly considered the relevant factors. As to the first factor, a

---

[1] We recognize *Conan Properties* addressed prejudice in geographic areas rather than prejudice resulting from different types of infringing products, but *Conan Properties* still holds the propriety of an injunction turns on prejudice to the infringer. *Id.*

## No. 12-10525

leading treatise states, "All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed." 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:2 (4th ed. 2001). As to the second, the same treatise states, "[T]here seems little doubt that money damages are 'inadequate' to compensate [owner] for continuing acts of [infringer]." *Id*. The district court properly considered the final two factors, explaining that:

> In order to determine whether the injunction should issue, the Court balances the equities, weighing the degree of prejudice Abraham would suffer if either use was permanently enjoined against the Greeks' right to exclusive use of the marks and the public interest in avoiding consumer confusion caused by their continued use.

Therefore, the district court did not abuse its discretion by relying on *Conan Properties* to use the "degree of prejudice" test in fashioning injunctive relief.[2]

### B

The district court applied its degree of prejudice test to Abraham's use of the Greek Organizations's names and insignia in its advertising and to Abraham's sale of wood-carved replicas of the Greek Organizations's names, crests and identifiable objects, as well as the sale of the double raised crest backings. The court reasoned Abraham could easily continue to advertise all of his products without using the Greek Organizations's names and insignia. He could, for example, use the names and insignia of fraternities and sororities that

---

[2] Although *Conan Properties* and *Champion Products* used somewhat different language, the "degree of prejudice" test comes within the sound discretion of the district court, which we do not disturb. *Conan Properties*, 752 F.2d at 153; *Champion Products*, 686 F.2d at 1046.

do not have licensing programs. He could use fictional names. In addition, the court rejected Abraham's request to avoid a ban by including disclaimers. The district court further enjoined Abraham's sale of objects containing the Greek Organizations's full names, those objects copied from the Greek Organizations's crest or insignia, and wood reproductions of their crests. The only product the district court did not enjoin Abraham from selling was the double raised crest backings. With respect to that particular product, the district court determined the potential prejudice to Abraham is comparable with the prejudice to the defendants in *Conan Properties*, who had invested considerably in their business due to the trademark owner's delay.

The district court did not abuse its discretion in crafting an injunction to balance the equities. *See Taco Cabana Int'l v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991) (holding district court has "considerable discretion in fashioning an appropriate remedy for infringement"). The injunction prevents Abraham from selling products that make up less than 2.44% of his total sales. This will not put Abraham out of business. The infringing item Abraham can continue to sell, the double raised crest backing, is the product Abraham contended drove his sales of other non-infringing products—the only item that if enjoined from selling, would cause Abraham substantial prejudice.

Moreover, the district court did not abuse its discretion by not ordering disclaimers in lieu of a ban. Abraham relies on *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000) to assert requiring disclaimers is preferable. Unlike in *Westchester Media*, the district court here did not "misinterpret applicable law," so an abuse of discretion does not "automatically inhere[.]" *Westchester Media*, 214 F.3d at 671. In that case, we determined the

magistrate judge "unduly discounted the First Amendment interests impaired by the injunction[.]" *Id.* Therefore, an abuse of discretion automatically inhered, and we reviewed the injunction with that in mind. Here, however, the district court did not misapply the law, so our review is limited to an abuse of discretion standard.

In *Westchester Media*, we determined the First Amendment interests of the trademark infringer counseled against an outright ban. *Id.* ("Where the allegedly infringing speech is at least partly literary or artistic . . . and not solely a commercial appropriation of another's mark, the preferred course is to accommodate trademark remedies with First Amendment interests."). That is clearly not our case here, as Abraham does not suggest his use of the Greek Organizations's marks is "expressive to an appreciable degree[.]" *Id. See also Better Bus. Bureau of Metro. Houston v. Med. Dirs., Inc., et al.*, 681 F.2d 397, 404 (1982) (finding First Amendment commercial speech interests favor requiring disclaimers over outright ban). Abraham asserts factors besides First Amendment interests do counsel in favor of disclaimer and are present here, such as laches and acquicense. The district court determined a proper balance of the equities favors a ban despite the presence of these factors. Whether we would have made the exact same conclusion in the first instance is irrelevant because the district court applied the law correctly. The determination is reasonable, and we hold the district court did not abuse its discretion in fashioning this remedy.

The Greek Organizations assert they deserve a comprehensive injunction that covers the double raised crest backing. As we have discussed, however, the

No. 12-10525

district court properly balanced the equities in resolving this dispute and did not abuse its discretion in fashioning injunctive relief.

## V

For these reasons, we AFFIRM.