# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 26, 2024

Lyle W. Cayce
Clerk

———————

No. 22-10866

———————

Rolex Watch USA, Incorporated,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

BeckerTime, L.L.C.; Matthew Becker,

*Defendants—Appellees/Cross-Appellants*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-1060

———————————————————————

Before King, Willett, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

Following a bench trial for this trademark infringement dispute brought under the Lanham Act, 15 U.S.C. §§ 1051, et seq., the district court determined that BeckerTime infringed Rolex's trademark but refused to disgorge BeckerTime of its profits after finding that the laches defense applied. It then enjoined BeckerTime from further infringement, subject to various exceptions. The parties cross-appealed, with Rolex seeking a modification to the injunction, treble profits, and attorneys' fees, and BeckerTime seeking the application of an alternative test to determine

No. 22-10866

infringement.  As explained below, we AFFIRM in part, MODIFY in part, and REMAND in part.

I

This is a trademark infringement dispute involving allegations of counterfeit and infringing use of Rolex's marks by BeckerTime.  Rolex is a luxury watch seller with a legally protectable interest in numerous trademarks.  BeckerTime sells primarily decades-old preowned watches containing Rolex branded parts.  The at-issue watches in this case are watches sold by BeckerTime that are identified as "Genuine Rolex," but contain both Rolex and non-Rolex parts.  The watches specifically considered by the district court contained additional diamonds, which were added "as hour markers to the refinished dials by drilling holes in the dials and placing aftermarket diamonds or other stones and settings in the holes."  To refinish dials, BeckerTime "strips the dial down to bare metal, then, after the refurbishing process is complete, reapplies Rolex's trademarks."  These "modifications" are not performed or authorized by Rolex.

BeckerTime lists the retail prices of their modified watches with comparison prices to new Rolex watches, but for the watches considered, the district court found that "Rolex has never sold a watch matching the description" provided by BeckerTime.  The at-issue watches contain "at least one Rolex trademark" and "aftermarket bezels (not made or endorsed by Rolex) . . . including bezels with added diamonds."  BeckerTime further applies "aftermarket bands or straps (not made or endorsed by Rolex)" that "sometimes include a genuine Rolex clasp or buckle displaying Rolex's trademarks."  The parts BeckerTime adds to the at-issue watches "do not bear any markings indicating BeckerTime is the source." Further, the district court found that the parts replaced, such as the bezel, dials, and bracelets, "are integral and necessary to the at-issue watches."

No. 22-10866

In September 2020, Rolex sued BeckerTime alleging counterfeit and infringing use of Rolex's trademark in connection with the advertising, promotion, service, and sale of watches and individual watch parts that are not authorized or sponsored by Rolex and that are not genuine products of Rolex. Rolex sought to enjoin BeckerTime from infringing its trademark and to force it to disgorge its profits related to infringement. The parties waived a jury and proceeded to a bench trial on October 25, 2021.

The district court issued a Memorandum Opinion and Order, and set out its Final Judgment which enjoined BeckerTime from using Rolex's trademark in specific applications. It held that "BeckerTime infringed Rolex's trademark protection by counterfeiting Rolex watches." However, after balancing the equities, the district court concluded that Rolex was not entitled to disgorge BeckerTime's profits because laches applied. It made no rulings as to attorneys' fees or treble damages under the Lanham Act. This appeal followed.

## II

Following a bench trial, we review the district court's factual findings for clear error and review any legal issues de novo. *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015). Likelihood of confusion is a question of fact reviewed for clear error. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 196 (5th Cir. 1998). Factual findings made during a bench trial deserve "great deference." *Guzman*, 808 F.3d at 1036. A district court's finding of fact is clearly erroneous only if it is "implausible in the light of the record considered as a whole." *Brumfield v. Cain*, 808 F.3d 1041, 1057 (5th Cir. 2015) (quotation marks and citation omitted).

Though we review legal issues de novo, we review the scope of the district court's injunction and its application of laches for an abuse of discretion. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 334 (5th

Cir. 2008). "A district court's ruling regarding [15 U.S.C.] §§ 1116 and 1117 remedies is subject to an abuse of discretion standard of review." *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 347 (5th Cir. 2002) (quoting *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000)).

## III

### A. Infringement

We first address whether the district court applied the correct legal framework to determine that BeckerTime infringed on Rolex's trademarks. We conclude that it did.

BeckerTime argues that a modified test for infringement involving "decades' old" products arises from the Supreme Court's decision in *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947). According to BeckerTime, the district court improperly applied the traditional digits of confusion factors without any discussion of *Champion*. Rolex counters that the district court applied the correct legal framework, noting that it appropriately followed *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816 (1998), and other established precedent involving altered watches. Rather than suggesting that *Champion* is inapplicable, Rolex argues that the district court implicitly concluded that *Champion*'s "misnomer" exception applied in the instant case.

The district court did not address *Champion*. It instead relied on the traditional "likelihood of confusion" analysis. "To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice*, 518 F.3d at 329. First, the district court determined that Rolex's marks were registered and incontestable, as required by statute. 15 U.S.C. §§ 1057(b), 1115(a)-(b). Next, the district court determined that Rolex had shown that BeckerTime's use of the mark "creates a likelihood of

No. 22-10866

confusion in the minds of potential consumers" relying on the non-exhaustive list of factors set forth in *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000).[1]  It concluded that these factors "point towards a likelihood of confusion and therefore infringement."

BeckerTime urges us to reject the district court's analysis, noting that "these factors are insufficient on their own to balance Rolex's trademark rights with the rights of an owner (such as BeckerTime) of a used (here, **vintage**) watch in repairing and customizing that watch without having to remove the underlying Rolex marks."  Pointing to district court cases in our circuit, BeckerTime requests we consider additional factors, including (1) the extent and nature of changes made to the product, (2) the clarity and distinctiveness of the labeling on the rebuilt product, and (3) the degree to which any inferior qualities associated with the reconditioned product would likely be identified by the typical purchaser with the manufacturer. *See Neles-Jamesbury, Inc. v. Valve Dynamics, Inc.*, 974 F. Supp. 964, 970 (S.D. Tex. 1997); *Brandtjen & Kluge, Inc. v. Prudhomme*, 765 F. Supp. 1551, 1567 (N.D. Tex. 1991).

We decline today to consider these additional factors because there is no need in this case.  Although the district court did not expressly cite *Champion*, our review of the record indicates it properly considered and applied *Champion*.[2]

---

[1] These factors include "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am Rice.*, 518 F.3d at 329.

[2] Although the district court did not expressly mention *Champion* in its ruling following the bench trial, it addressed BeckerTime's *Champion* argument in the context of disclosures in ruling on cross-motions for summary judgment.  It noted that BeckerTime

No. 22-10866

In *Champion*, the plaintiff was a manufacturer of spark plugs which it sold under the trademark "Champion." 331 U.S. at 126. The defendant collected these used plugs, repaired and reconditioned them, and resold them, while retaining the word "Champion" on the repaired and reconditioned plugs. *Id.* The district court concluded that the defendant infringed the Champion trademark and enjoined the defendant from offering or selling any of the plugs that had been repaired or reconditioned unless, *inter alia*, the trademark and type and style marks were removed. *Id.* at 126-27.

On appeal, the Second Circuit found infringement and unfair competition, but it eliminated the requirement that the trademark and type and style marks be removed from the repaired or reconditioned plugs. *Id.* at 127. The issue before the Supreme Court was whether the Second Circuit's relief was adequate—particularly its decision that the defendant was not required to remove the trademark "Champion" from the resold plugs. *Id.* at 128.

The Supreme Court clarified that *Champion* dealt with "second-hand goods," as BeckerTime does in the instant matter. *Id.* "We put to one side the case of a manufacturer or distributer who markets new or used spark plugs of one make under the trade mark of another." *Id.* But the plugs at issue "are nevertheless Champion plugs and not those of another make." *Id.* The Supreme Court affirmed the Second Circuit's decision because the plugs were "clearly and distinctively sold as repaired or reconditioned rather than as new." *Id.* at 130.

––––––––––––––––––––––––––––––

was unable to show that its disclosures were sufficient because Rolex had "successfully shown that there has been at least *some* level of confusion," so a genuine dispute of material fact existed as to whether the disclosures were sufficient under *Champion*.

The Supreme Court carved out an exception (the "misnomer" exception) in "[c]ases . . . where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even though the words 'used' or 'repaired' were added." *Id.* at 129. In *Champion*, the misnomer exception did not apply because it involved "no more than a restoration . . . of their original condition," not a new design. *Id.*

Thus, *Champion* instructs that a reseller may utilize the trademark of another, so long as it involves nothing more than a restoration to the original condition, and not a new design. In that case, "[f]ull disclosure gives the manufacturer all the protection to which he is entitled." *Id.* at 130.

Here, BeckerTime does more than recondition or repair vintage Rolex watches. As the district court found, BeckerTime produced "modified watches," with "added diamonds," "aftermarket bezels," and aftermarket bracelets or straps. It found that the watches sold by BeckerTime were "materially different than those sold by Rolex." In fact, the district court found that Rolex has never sold watches matching the descriptions provided by BeckerTime. Unlike the plugs in *Champion* that "are nevertheless Champion plugs and not those of another make," BeckerTime's watches are of another make and cannot properly be called genuine Rolex watches. *See Champion*, 331 U.S. at 128. Moreover, throughout its brief, BeckerTime describes this process as "customization," not restoration. Accordingly, *Champion*'s misnomer exception properly applied to the facts of this case and the district court did not err by conducting a traditional digits of confusion analysis.

In applying the correct test, the district court concluded that "the digits of confusion point towards a likelihood of confusion and therefore infringement." The district court found that customers had "inquired as to

the authenticity," stating "they are confused as to whether the watch is fully genuine Rolex." The district court also found that BeckerTime "ha[d] received complaints about the quality of the watches and complaints that the watch was not actually composed of exclusively genuine Rolex parts." Although BeckerTime includes many disclaimers, the district court found these were insufficient because "[s]ubsequent potential purchasers" may not have access to those, and because the "disclosures mislead purchasers into thinking there is a comparable genuine Rolex, when in fact, there is not always one."

We find no clear error in the district court's determination that BeckerTime infringed Rolex's trademark because its watches, lacking sufficient disclosures, created a likelihood of confusion in consumers. *See Capece*, 141 F.3d at 196. After applying the correct test, the district court made factual findings that are well supported by the record.

## B. Remedies

We next turn to Rolex's arguments about the scope of relief granted by the district court. We first consider the district court's application of the laches defense precluding disgorgement of BeckerTime's profits. We then address the district court's decision not to award treble profits and attorneys' fees. Finally, we consider the proper scope of the injunction.

### 1. Laches Defense

Rolex argues that the district court abused its discretion in finding that BeckerTime's "deliberate counterfeiting" did not bar laches, claiming BeckerTime's "unclean hands" preclude it from relying on this equitable defense. Further, assuming *arguendo* that BeckerTime acted in good faith, Rolex argues that BeckerTime has failed to show that it suffered undue prejudice caused by Rolex's delay in filing suit. BeckerTime counters that the district court correctly found insufficient evidence of unclean hands to

preclude equitable defenses, and that sufficient evidence shows that BeckerTime was unduly prejudiced by Rolex's delay in pursuing its remedies.

"A laches defense cannot be asserted by a party with unclean hands because it is equitable." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013). "A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." *Id.* (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008)).

The district court found that there was "insufficient evidence to show [BeckerTime] had unclean hands" and that "Rolex failed to show [the] subjective and knowing bad faith necessary to foreclose [BeckerTime's] equitable defenses." This finding considered the "inherent" aspect of reselling luxury goods—that sellers wish to benefit from the reputation and goodwill of the brand name. But it rejected that this alone is sufficient to show unclean hands. The record supports the district court's conclusion, as the emails between BeckerTime and its customers show it goes to great lengths to clarify which parts are original Rolex, which are customized or modified, and which are aftermarket. This supports the district court's conclusion that BeckerTime did not intentionally infringe Rolex's mark and thus was not precluded from raising this equitable defense.

A defendant urging a laches defense for inexcusable delay that causes prejudice must establish: "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Am. Rice*, 518 F.3d at 334 (quoting *Westchester Media*, 214 F.3d at 668). The time period for laches "begins when an owner of a mark first has knowledge of the accused use." *Id.* (citation omitted); *see also*

*Capece*, 141 F.3d at 205 ("The period for laches begins when the plaintiff knew or should have known of the infringement.").

The district court concluded that at a minimum, Rolex's agent "should have known about BeckerTime in 2010, ten years prior to the filing of the lawsuit, and no later than 2013 when [a Rolex employee] wrote that BeckerTime watches were junk." It further found that "Rolex offer[ed] no valid justification for this delay." It determined that "BeckerTime likely would not have shifted its business model to be reliant on the sale of altered Rolex watches if Rolex had brought this suit promptly. BeckerTime relied on Rolex's cooperation in building this valuable business, and Rolex assisted BeckerTime with the importation of watches for repair or return." Accordingly, the district court determined that Rolex may not disgorge BeckerTime of its profits. This conclusion was not an abuse of discretion. *See Am. Rice*, 518 F.3d at 334.

On appeal, Rolex offers no justification for the delay, instead arguing that BeckerTime failed to show prejudice. But the record supports that the ten years of permitted sales enabled BeckerTime to build up a successful business that it would not otherwise have invested in absent Rolex's delay in filing suit. This is clear prejudice. Accordingly, the district court correctly decided that BeckerTime not be disgorged of profits resulting from Rolex's delay in filing suit.

## ii. Attorneys' Fees and Treble Profits

Next, Rolex claims that the district court erred in not awarding treble profits and attorneys' fees under 15 U.S.C. § 1117(b). BeckerTime claims that the district court correctly applied principles of equity to bar monetary recovery by Rolex and that Rolex has waived any argument concerning trebling or attorneys' fees by failing to move for such relief below. BeckerTime emphasizes the district court's finding that there was

insufficient evidence of deliberate counterfeiting by BeckerTime to warrant the imposition of treble profits and attorneys' fees.

Section 1117 of the Lanham Act sets forth the statutory scheme for awarding profits in a trademark infringement case. Section 1117(a) entitles a mark holder to recover the defendant's profits, subject to the principles of equity. 15 U.S.C. § 1117(a); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584 (5th Cir. 1980). "A plaintiff's entitlement to disgorged profits is assessed based on the equities of the case and does not automatically follow from liability." *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 875 (5th Cir. 2019). Further, *Champion* instructs that where the equities of the case may be satisfied by an injunction, the court will not award profits to the plaintiff. *See Champion*, 331 U.S. at 131 (denying accounting in unfair competition and trademark infringement case where injunction satisfied equities of case). Here, the record supports the district court's denial of profits to Rolex pursuant to § 1117(a) because it properly found that the laches defense applied and refused to disgorge BeckerTime of its profits. Further, we are satisfied that the injunction properly addresses the equities of the case.

But when counterfeit marks are involved, as appears to be the case here, § 1117(b) of the Lanham Act applies. Under this subsection, when a defendant knowingly and intentionally uses the mark or designation of another, a plaintiff seeking a remedy under § 1117(a) is entitled to three times the defendant's profits plus reasonable attorneys' fees in every case, except where there are "extenuating circumstances." 15 U.S.C. § 1117(b).

The district court did not express any opinion regarding treble profits and attorneys' fees. Rolex is not entitled to treble profits, as the district court refused to disgorge BeckerTime of *any* profits because it properly applied the defense of laches. Although § 1117(b) also contemplates attorneys' fees, we

agree with BeckerTime that Rolex's requested relief is foreclosed. First, the district court made no finding of intentionality. It specifically stated that "Rolex failed to show subjective and knowing bad faith necessary to foreclose equitable defenses." Accordingly, Rolex has not met its burden of showing intentionality under § 1117(b). Additionally, Rolex waived its request for attorneys' fees. Our precedent is clear—Federal Rule of Civil Procedure 54(d)(2) requires parties to move for attorneys' fees within fourteen days of entry of final judgment, and failure to do so constitutes waiver. *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996). There is no dispute that Rolex failed to move for attorneys' fees with the district court and it cites no authority to excuse that failure. Accordingly, the district court did not err in opting not to award treble profits and attorneys' fees.

### III. SCOPE OF INJUNCTION

Finally, Rolex argues that the district court erred by not enjoining BeckerTime from using non-genuine bezels and non-genuine dials on Rolex-branded watches. BeckerTime argues that the injunction comports with the district court's factual findings and the equitable principles it considered.

We agree with Rolex that the district court should have enjoined the sale of Rolex watches with non-genuine bezels. The district court specifically found that "advertisements labeling watches with a non-genuine bezel as a Rolex is likely to confuse customers" and that, like dials and bracelets, bezels "are integral and necessary to the at-issue watches." Consistent with these findings, the district court prohibited BeckerTime from displaying the "GENUINE ROLEX" trademark "in any disclosures in connection with goods or services of watches that include: non-genuine (i.e. not made by Rolex) bezels." Yet by excluding non-genuine bezels from parts 1(a) and (b) of its injunction, the district court treated "integral and necessary" watch parts inconsistently, authorized BeckerTime to sell what it believed would likely cause confusion if advertised, and permitted BeckerTime to use Rolex

trademarks on watches with non-genuine bezels, but prohibited the same action if it used the GENUINE ROLEX trademark in a disclosure.

These orders are difficult to reconcile, and we therefore grant Rolex's requested relief and add non-genuine bezels to parts 1(a) and (b) of the district court's injunction to make it consistent with the district court's other findings and to treat all "integral and necessary" watch parts the same. *See Meece*, 158 F.3d at 825.

However, we reject Rolex's argument that the district court erred by excluding all non-genuine *dials* from parts 1(a) and (b) of the injunction. The district court enjoined "dials where the dial is stripped of the original paint/coating and markings, then repainted/recoated, . . . or to which other words have been added." It specifically excluded customized dials that do not involve the removal or reapplication of Rolex's trademarks, and which may have added diamonds, stones, or other embellishments.

First, under *Champion*, there is a difference between adding diamonds to a dial and refinishing a dial—the former is customization, the latter restoration. With the right disclosures, as required by the injunction, BeckerTime is free to customize watches for customers upon request. *See Champion*, 331 U.S. at 130 ("Full disclosure gives the manufacturer all the protection to which he is entitled.").

Further, the district court's order is supported by the fact that BeckerTime's refinishing process necessarily required removing and reapplying Rolex's trademarks. As Rolex concedes, "[t]here was no evidence that BeckerTime 'customized' dials in a manner other than using a refinishing process that involved removing and reapplying Rolex's trademarks." The district court here appropriately enjoined BeckerTime from doing what it was *doing*, not what it *could* do.

We likewise reject Rolex's argument that the district court erred in requiring that BeckerTime inscribe "CUSTOMIZED BY BECKERTIME" on the back of the watches, claiming it should not permit them to continue selling "counterfeit" watches at all. But the district court here specifically found that the disclosures BeckerTime made did not "fully alleviate confusion," and it is reasonable that the district court required an additional disclosure to adequately alleviate any remaining confusion.

Finally, we reject Rolex's argument that the district court improperly permitted BeckerTime to sell counterfeit watches upon customer request. The district court reasonably found that, with the required disclosures, no customer requesting a customized watch by BeckerTime would confuse it with a genuine Rolex watch.

However, turning to section 1(c), we agree with Rolex that the typographical errors in the section render it vague and unqualified. *See State of Louisiana. v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022) ("To comply with Rule 65(d) a district court's order should state its terms specifically and describe in reasonable detail the conduct restrained or required."). However, we cannot understand the district court's intent as to this section. Accordingly, we order a limited remand solely for the district court to clarify its language in part 1(c). Specifically, it should correct the two following typographical errors by filling in the missing language as it deems appropriate: (1) "where the (including. . ." and (2) "or to which other have been added." The remainder is affirmed as modified.

IV

For the foregoing reasons, we AFFIRM the district court's judgment insofar as it concluded that BeckerTime infringed Rolex's trademarks, that the laches defense prevented disgorgement of BeckerTime's profits, and that Rolex was not entitled to treble profits or attorneys' fees. We AFFIRM AS

No. 22-10866

MODIFIED the district court's injunction in part and REMAND in part to correct the errors outlined above. This is a limited remand. Accordingly, should either party seek appellate review following modification of the injunction by the district court, the appeal will be assigned to this panel. *See M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 288 (5th Cir. 2018).