# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2012

Lyle W. Cayce
Clerk

No. 09-60037

ERIC LAQUINNE BROWN,

Plaintiff-Appellant

v.

ROBERT G SUDDUTH, Investigator, Pontotoc City Police, in Individual and Official Capacities; MIKE MCGOWAN, Investigator, Pontotoc County, in Individual and Official Capacities; FRANKY DANIELS, Ex-Sheriff, in Individual and Official Capacities; LARRY POOLE, Sheriff, in Individual and Official Capacities,

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before GARZA, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Eric Laquinne Brown, a Mississippi state prisoner who is serving a life sentence for murder and manslaughter, appeals from the judgment in favor of the defendants in his Section 1983 suit. Proceeding *pro se* at trial and now on appeal, Brown alleged that his Fourth Amendment rights were violated (1) by delay in holding a probable cause determination after his arrest and (2) by his warrantless arrest. After the jury announced a verdict for the defendants, Brown filed a Rule 50(b) motion for a judgment as a matter of law. The district

court denied the motion and entered judgment on the verdict. Brown timely appeals, raising numerous issues. We AFFIRM.

BACKGROUND

Pontotoc is a city of about 5,500 people in northeast Mississippi. Early on Saturday morning, January 23, 1999, the Pontotoc Police Department received a call from the Memphis Police Department. Pontotoc Police Investigator Robert Sudduth returned the call soon after he began work at 6:00 a.m. Sudduth learned that Memphis police officers had discovered the body of Shorelonda Moore inside a partially burned car. The victim was dressed in a McDonald's restaurant uniform. The car bore a Pontotoc County license plate and belonged to the victim, who lived in the City of Pontotoc and worked at the local McDonald's.

Immediately, the investigation centered on Eric Brown, the plaintiff in the present suit. Pontotoc police were familiar with Moore and Brown due to several domestic disputes between them. Moore and another woman, Tenille Johnson, had previously each had a child by Brown. Moore was over six-months pregnant with a second of Brown's children when she died. Brown married Johnson only days before Moore's death.

As the investigation progressed that morning, Sudduth learned from the McDonald's manager that Moore had worked the previous day. The manager stated that Brown had telephoned the restaurant several times on Friday, and that Brown and Moore were to meet after Moore's shift. One of Moore's friends told investigators that Moore and Brown had plans to leave town for the weekend. Brown's neighbor told Sudduth that Brown had been away from home Friday night, and officers could not locate Brown at home Saturday morning.

On Saturday afternoon, a Pontotoc officer stopped a vehicle for failing to display a license plate. Brown was the driver, traveling with his wife Johnson. By then, Brown was wanted for questioning in connection with Moore's death. Sudduth and other officers were dispatched to the scene. Brown at trial claimed

he was arrested during the traffic stop. The defendants introduced evidence Brown was arrested after being taken to the police station. The arrest report showed his arrest was at 2:00 p.m. It was not until Tuesday at 8:30 a.m. that a municipal judge found probable cause to arrest Brown.

Brown was indicted for the murder of Shorelonda Moore and for manslaughter due to the death of her unborn child. He pled guilty in 1999 and is currently serving a life sentence in a Mississippi state prison. In January 2002, he filed this Section 1983 claim for violation of his Fourth and Fourteenth Amendment rights. *See* 42 U.S.C. § 1983. There have been three earlier appeals from dismissals of his claims. Each time we reversed. The appeal we resolve today is the first taken from a judgment entered after a jury trial.

Brown's *pro se* brief presents 13 issues. The principal argument meriting analysis is that no bona fide emergency or other extraordinary circumstance existed preventing him from receiving a probable cause determination within 48 hours of his arrest. Relatedly, Brown challenges his warrantless arrest.

In less detailed fashion, we also review his remaining issues. These include that the district court erred by informing the jury venire that Brown was an inmate, that certain jury instructions were erroneous, that a deposition should not have been admitted into evidence, that reversible error occurred with other evidentiary rulings, that the court's response to a jury note was error, that defense discovery violations necessitated a pre-trial conference, and that his motion for court-issued witness subpoenas should have been granted.

Not presented is the question that usually must be answered in a case such as this of whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Two of Brown's earlier appeals were from district court rulings that *Heck* barred

his claim of an illegal arrest; each time we reversed.[1]  No party raised the issue again on remand or in the briefing on this appeal.  The parties have treated *Heck* as if it were sufficiently addressed in the earlier appeals.  We believe it was.

## DISCUSSION

Brown argues the district court should have entered judgment as a matter of law on his claims that his constitutional rights were violated when he was arrested without a warrant and when he was incarcerated for 66 hours before a magistrate determined there was probable cause for the arrest.

This court gives *de novo* review to a district court's denial of a motion for judgment as a matter of law.  *Brennan's, Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004).  Such a judgment is proper when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  This will only occur if "the facts and inferences point so strongly and overwhelmingly in the movant's favor" that jurors could not reasonably have reached a contrary verdict.  *Dickie Brennan & Co.*, 376 F.3d at 362.  We credit the non-moving defendant's evidence and "disregard all evidence favorable to [the plaintiff] that the jury is not required to believe."  *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002) (quotation marks and citation omitted).  After a jury trial, our standard of review is "especially deferential."  *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 456 (5th Cir. 2000).

## I.     *Timely Judicial Determination of Probable Cause*

In 1975, the Supreme Court held that the Fourth Amendment requires a fair determination of probable cause to be made "promptly after arrest."

---

[1] In 2002, we held that the district court's dismissal of the complaint under *Heck* was premature.  *Brown v. Subbuth,* 57 F. App'x 210 (chart), 2002 WL 31956168, at *1 (5th Cir. 2002) (per curiam) (Officer Sudduth's name as defendant later corrected by court order).  In 2007, we reversed another dismissal, rejecting "that the proof required to establish Brown's unlawful arrest claim necessarily would imply the invalidity of his underlying murder conviction."  *Brown v. Sudduth*, 255 F. App'x 803, 806 (5th Cir. 2007) (per curiam).

*Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). Sixteen years later, the Court endeavored "to articulate more clearly" what the Fourth Amendment required. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

This caselaw created two distinct presumptions. "Judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.*; *see also Powell v. Nevada*, 511 U.S. 79, 83 (1994). Delays less than 48 hours also can violate an arrestee's rights when "unreasonable," that is, "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56. Any probable cause determination before the 48-hour mark is presumptively reasonable and the burden of showing otherwise falls to the person arrested. *Id.* In evaluating such contentions, "courts must allow a substantial degree of flexibility." *Id.* Beyond 48 hours, "the calculus changes." *Id.* at 57. In that situation, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.*

The Court acknowledged that nothing in "the Constitution compels a specific time limit." *McLaughlin*, 500 U.S. at 56; *see* 3 LaFave, *Search and Seizure* § 5.1(g) at 58 (4th ed. 2004). Also the Court rejected the view that under *Gerstein* "a probable cause determination [was] to be made *as soon as the administrative steps incident to arrest were completed*." *McLaughlin*, 500 U.S. at 54 (emphasis in original) (quotation marks and citation omitted).

We give *pro se* briefs a liberal construction. *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Liberally construed, Brown's brief presents three Fourth Amendment questions relevant to the Rule 50 motion. One is that there were no extraordinary circumstances that warranted an exception to the 48-hour rule. A second argument is that the delay here was for impermissible reasons. The third claim we examine, in Part II of the opinion, is that Brown's warrantless arrest was unconstitutional.

*1.    Extraordinary Circumstances*

A foundational fact is how long the delay was from arrest until the probable cause determination. Officer Sudduth testified that Brown was not arrested at the traffic stop, was given his *Miranda* warnings at the police station around 2:00 p.m., and the arrest occurred at about that time. Rational jurors would be entitled to find the officer's statements accurate as to the time of arrest. *See Dickie Brennan & Co.*, 376 F.3d at 362. Brown claimed he was arrested during the traffic stop, apparently only 15 to 30 minutes earlier.

The judicial determination of probable cause was made at 8:30 a.m. on Tuesday, 66.5 hours after Brown's arrest. The jury was instructed on the need to have a determination within 48 hours, and if not, for "an emergency or other extraordinary circumstance" to have prevented an earlier determination.

We summarize the relevant evidence. Pontotoc police rarely had to investigate a murder. Sudduth testified there had been only two murders since 1985. Beginning when the body was recovered in Memphis, two police departments – one from Tennessee and one from Mississippi – were working in tandem to assess whether Moore had been murdered in Memphis, in the City of Pontotoc, or in the county of Pontotoc outside of the city.

The municipal judge needed a basis to believe the murder occurred in his city. A state statute provides that persons "arrested for a violation of law within the municipality may be brought before [a municipal judge] for initial appearance." Miss. Code Ann. § 21-23-7 (1972). A Mississippi court rule provides that the initial appearance is the occasion for the determination of probable cause. Miss. Unif. Cir. and Cnty. Ct. R. 6.03. On Tuesday, a Pontotoc municipal judge issued warrants for Brown's arrest. Evidence to justify presenting Brown's case to a judge in Pontotoc was needed.

The authority of law enforcement officers to make the initial arrest without a warrant comes from a different statute. Miss. Code Ann. § 99-3-7 (1972). The statute contains no explicit geographical limitation on where the

crime had to occur in order for the arrest to be made by Mississippi law enforcement officers.[2]  Even were state courts to imply a limitation on arrest that was not followed here, violations of state law do not – "without more" – deprive federal rights redressable under Section 1983.  *Miller v. Carson*, 563 F.2d 757, 760 n.7 (5th Cir. 1977) (citing *Screws v. United States*, 325 U.S. 91, 108-09 (1945)).  Related is Brown's argument that the district court erred by excluding evidence on the substantive demands of Mississippi Uniform Circuit and County Rule 6.03 on initial appearances.  If this state rule creates procedures that are different from the obligations arising from *Gerstein* and *McLaughlin*, then they too, without more, are not the basis for a Section 1983 claim.

Officer Sudduth testified that he determined on Monday, during the interview of Brown's wife, Tenille Johnson, that the murder occurred in Pontotoc.  Her interrogation started at 1:00 p.m. on Monday.  She admitted seeing Moore's body "slumped over in the seat" of Brown's vehicle near the West Town Cafe in Pontotoc.  From the car she drove, following Brown while they both drove to Memphis, she "never saw [Moore] move."  It was "pretty close to the evening" before Johnson's interview was finished.

Q. So Eric Brown was driving around with a dead body?

A. [Sudduth] Yes, sir.  That's what it appeared to [Tenille Johnson] at that time.

Q. Okay.  So this was on the 25th.  Did you do anything on the 25th to try and get this information in front of a judge?

A. This new information . . . this was firsthand information, the closest to the facts that we thought at that time was the truth. . . . I remember before we finally ended, at that time, I felt like it was time to go ahead and at least talk to the judge, get an arrest

---

[2] Some state statutes expressly address the authority to arrest for crimes occurring out of state. 2 William E. Ringel, *Searches and Seizures & Arrests and Confessions* § 23:10 (2d ed. 2011).  The Mississippi statute is silent.

warrant issued.  And he went out of the room, used the telephone, and got ahold of our municipal judge, Judge Henry.

Q.  Now, who went out of the room and called the judge?

A.  Captain Farris did.

No one asked Sudduth to state the time when the municipal judge was telephoned.  The municipal judge responded that he had "prior commitments that he had to take care of and advised that he would run by the office the first thing the next morning when the office opened."  When the police office opened at 8:00 a.m. on Tuesday, Sudduth presented an affidavit to the court clerk.  The judge arrived 30 minutes later, examined the affidavit, and conferred with Sudduth about the crime.  Probable cause may be determined "by a magistrate in a nonadversary proceeding on hearsay and written testimony."  *Gerstein*, 420 U.S. at 120.  The municipal judge determined there was probable cause and authorized arrest warrants for murder and manslaughter.

There was little on which jurors could rely to find that an effort to contact the municipal judge was made prior to the passage of 48 hours after the arrest.  Thus, there are two delays of potential significance.  The first is the failure even to try to contact a magistrate until more than 48 hours from the arrest.  The other is the additional delay that occurred after a judge was contacted due to his unavailability until the next morning.

We note preliminarily that there was no evidence of a history or policy in the Pontotoc Police Department of not seeking a magistrate's review if the need arose at inconvenient times.  In both *Gerstein* and *McLaughlin*, objectionable policies at the state and county levels were the moving force behind those opinions.  *See* 3 LaFave, *Search and Seizure* § 5.1(g) at 53-54.  For example under the Florida system reversed in *Gerstein*, "a person could be arrested without a warrant and subsequently put on trial . . . all without a preliminary hearing or other judicial determination of probable cause."  *Id.* § 5.1(g) at 54.  In

*McLaughlin*, the County of Riverside had a policy of no magistrate-access on weekends and holidays. *See McLaughlin*, 500 U.S. at 47.

We now examine whether the events causing the delay could be considered extraordinary. Police were concerned about their authority to get a probable cause determination on a crime that may not have occurred within the city. The Supreme Court has said that "delay motivated by ill will" is unreasonable. *Id.* at 56. There was no evidence that ill will or pretext underlay the effort to determine whether the crime occurred in Pontotoc.

In addition, Brown was not arrested without probable cause and then held "for the purpose of gathering additional evidence to justify the arrest." *Id.* Holding someone for that reason is an improper restraint when authorities do not have reasonable grounds to believe that person is guilty of an offense justifying an arrest. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003). "It is not the function of the police to arrest . . . and to use an interrogating process at police headquarters in order to determine whom they should charge before committing magistrate on 'probable cause.'" *Mallory v. United States*, 354 U.S. 449, 456 (1957), *limited on other grounds*, *Corley v. United States*, 556 U.S. 303, 321-22 (2009).

Once police did have fairly clear evidence that Brown committed the crime in their jurisdiction, we assume at least 50 hours had passed since the arrest. There is evidence that almost immediately, a magistrate was contacted. The magistrate was unavailable then, necessitating an overnight delay. In viewing the legitimacy of that delay, we must not ignore "practical realities" beyond the control of the police. *McLaughlin*, 500 U.S. at 57.

We also weigh that jurors made a decision on reasonableness. Some of our sister circuits have held that, absent evidence of an impermissible purpose, whether a particular length of detention is reasonable "is a question best left open for juries to answer based on the facts presented in each case." *Chortek v. City of Milwaukee*, 356 F.3d 740, 747 (7th Cir. 2004) (quotation marks and

citation omitted); *Berry v. Baca*, 379 F.3d 764, 769 (9th Cir. 2004). There was evidence on which jurors could rely that only a brief time passed beyond 48 hours when police resolved the uncertainties about jurisdiction, and police acted promptly thereafter by seeking a magistrate. The subsequent overnight delay was the result of the magistrate's unavailability.

These reasons could be seen as extraordinary. Brown argues instead that these reasons for delay are impermissible. We now turn to that argument.

2.      *Unreasonable Conduct and Probable Cause to Arrest*

Brown alleges that he was arrested for a traffic offense, then held so an investigation into the murder could occur. He relies on another court's conclusion that police cannot delay the probable-cause inquiry in order to investigate the suspect's participation in crimes other than those forming the basis for arrest. *See United States v. Davis*, 174 F.3d 941, 945 (8th Cir. 1999).

There is scant evidence, though, that Brown was arrested for driving without proper license plates and then held while being investigated for murder. The arrest report itself, dated Saturday at 2:00 p.m., stated Brown was arrested for the murder. There was a substantial basis by that point to arrest him: (i) Brown's recent history of violence toward Moore; (ii) the McDonald's manager's report that Brown and Moore had argued repeatedly that Friday and had plans to travel together that evening; (iii) information from Moore's mother that the pregnant victim failed to return home Friday, as well as representations from a neighbor that Brown was neither home when the neighbor retired to bed at 2:00 a.m., nor on Saturday morning; and (iv) the victim's friend's corroboration that Moore had weekend plans with Brown.

These facts, all known to Officer Sudduth before Brown's arrest, satisfied the threshold for probable cause of guilt of the crimes, namely, a "fair probability" that Brown was responsible for Moore's murder and the death of her unborn child. *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999); *see* Miss. Code Ann. § 97-3-19(a) (1999) (outlawing the "killing of a human being .

10

. . [w]hen done with deliberate design"); *id.* § 97-3-37 (criminalizing the "willful killing of an unborn quick child" as manslaughter). "Probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been . . . committed and that the individual arrested is the guilty party." *United States v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009) (quotation marks and citation omitted).

The delay was not for any reason previously recognized as impermissible. Instead, delay was for the purpose of discovering whether Brown committed his crimes within the officers' jurisdiction. We are not concluding that the indefinite holding of a prisoner while jurisdictional doubt is resolved can be justified, only that the few hours beyond 48 that passed here before seeking a magistrate's ruling could be found by jurors not to violate the Fourth Amendment. We are also not concluding that any jurisdictional dilemma will excuse a delay. As summarized for the jury during closing argument:

> [Police] knew a murder had taken place all right. They had a young woman dead. There was no question about the crime. It was just a question about where . . . . And that caused a jurisdictional issue. Which police department? Which law enforcement agency handles it? . . . In all [Sudduth's] years working for the Pontotoc Police Department, there's [sic] been two murders, and this was one of them. And he had never had anything like this."

Police were diligent once jurisdiction was determined, and then confronted the practical reality of having to wait overnight for a magistrate.

On these facts, jurors were not prohibited from finding delay was justified as an "emergency" or "extraordinary circumstance" due to law enforcement's late discovery of facts to support that the crime occurred within the relevant jurisdiction. *McLaughlin*, 500 U.S. at 57.

## II.    *Illegal Arrest Claim & Other Issues*

Brown also claims he was subjected to an illegal arrest. Police may arrest a suspect "in a public place without a warrant if they have probable cause to

believe that the individual committed a felony." *Garcia*, 179 F.3d at 268 (citing *United States v. Watson*, 423 U.S. 411, 423-24 (1976)). This principle explains why the district court was correct not to attribute significance in its jury charge to Brown's arrest having been warrantless. The facts already recounted furnished probable cause, for which hearsay can be used. *United States v. McCarty*, 36 F.3d 1349, 1356 (5th Cir. 1994). Brown also argues that police needed to prepare sworn affidavits before the arrest. His argument misreads the Fourth Amendment, which only specifies that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. By its plain terms, the Amendment requires an oath or affirmation when a warrant is sought and has no application to the warrantless arrest for a felony.

We reject Brown's myriad arguments concerning alleged trial errors. Brown did not object to the errors and can succeed only if he can show error that is plain and affected his substantial rights; if that much is shown, then this court has discretion to correct if leaving the error undisturbed would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mason*, 668 F.3d 203, 208 (5th Cir. 2012) (quotation marks and citation omitted). Brown failed to show that the district court committed plain error by informing the jury venire that Brown was an inmate and a convicted felon. Throughout the trial, Brown himself discussed that he was an inmate. We disagree with Brown that instruction one was confusing. It was intelligible in defining probable cause for an arrest and detailing when an arrest could be made. Instruction four also was valid, as it accurately stated the law under *Gerstein* and *McLaughlin* and tracked the language from *Baker v. McCollan*, 443 U.S. 137, 143 (1979).

The court did not abuse its discretion in (1) allowing the defendants to impeach Brown with his deposition testimony, (2) refusing to allow Brown to admit affidavits purportedly undermining Sudduth's testimony, or (3) denying Brown's request for subpoenas. *See Learmonth v. Sears, Roebuck & Co.*, 631

F.3d 724, 733 (5th Cir. 2011); *United States v. Gonzales*, 79 F.3d 413, 424-25 (5th Cir. 1996).

Brown's contention that the district court erred in presenting the issue of qualified immunity to the jury is meritless. A jury may be given the issue of qualified immunity if that defense was not resolved on summary judgment. *Melear v. Spears*, 862 F.2d 1177, 1184 (5th Cir. 1989).

It was not an abuse of discretion by the district court, after receiving a jury note and hearing counsels' arguments, not to define the term "judicial determination" beyond what the original instructions conveyed. We review a judge's response to a jury note for an abuse of discretion and for harmfulness of any error. *United States v. Ramos-Cardenas*, 524 F.3d 600, 610 (5th Cir. 2008). There was no abuse of discretion. Finally, the record does not support Brown's allegation that the defendants violated discovery disclosure rules.

The motions to file untimely reply briefs and to amend exhibits are GRANTED. The judgment is AFFIRMED.