# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 6, 2024

Lyle W. Cayce
Clerk

No. 23-30424

Michael R. Holmes,

*Plaintiff—Appellee*,

*versus*

Corbett Reddoch; Gerald A. Turlich, Jr., *in his official capacity as sheriff of Plaquemines Parish*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-12749

Before Wiener, Elrod, and Wilson, *Circuit Judges*.

Jacques L. Wiener, Jr., *Circuit Judge*:

This civil rights lawsuit, that involves 42 U.S.C. § 1983 and Louisiana state law, arises out of the investigatory stop and subsequent arrest of Plaintiff-Appellee Michael Holmes by Defendant-Appellant Corbett Reddoch, a Plaquemines Parish Deputy Sheriff. Following a three-day trial, the jury found in favor of Holmes on, *inter alia*, his unlawful arrest claim under the Fourth Amendment. Reddoch appeals, contending that the district court erred in denying his motions for (1) judgment as a matter of law, and (2) a new trial. We AFFIRM.

No. 23-30424

# I. Background[1]

In September of 2018, Holmes attended a public fair located at Our Lady of Perpetual Help School in Belle Chasse, Louisiana. Holmes, a member of a camera club in Metairie, wanted to test out a new camera lens he had recently gotten.[2] He arrived at the fair at approximately 4:00 p.m. in the afternoon. After his arrival, he and a friend, Amos Jay Cormier, III, engaged in a "pleasant conversation" about local politics. Cormier testified that Holmes was "his normal cordial polite self" during that conversation— "a very civilized man, a civilized gentleman." Cormier testified that, to the best of his knowledge, Holmes had not been drinking. At some point between 4:00 and 4:30 p.m., Holmes saw another friend of his, James Olsen, and struck up a conversation about photography. Similar to Cormier's testimony, Olsen explained that Holmes was his "usual" self and "sober."

Holmes then began testing his new camera lens by taking pictures of an amusement ride that had a colorful mural on it. He climbed up one of the slides to gain a suitable vantage point and took all of the pictures he would take that day at the fair between 5:12 p.m. and 5:14 p.m.[3] Holmes then visited the various fair booths, during which time he observed a girl he wanted to invite on future photography club field trips. He testified that he had already

---

[1] "We credit the non-moving party's evidence and disregard all evidence favorable to the moving party that the jury is not required to believe." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (internal quotation marks, brackets, and citation omitted).

[2] This was not itself unusual, as the fair was a popular community event, featuring a roller coaster and game and food booths, among other attractions, at which visitors would often take photographs. Holmes had attended the fair several times before. The previous year, Holmes took pictures of the band performing at the fair and emailed them to a parish priest.

[3] Each photograph that Holmes took at the fair that day was shown to the jury. Some of those photographs also captured children sitting on the ride and waiting in line to get on the ride.

announced to the club that he planned to take his niece's children and other children on an upcoming club trip to take photographs at an amusement park. He approached a woman whom he believed to be the girl's mother, introduced himself by name, and they exchanged contact information. He did not take a picture of the child.

Some time later, Holmes was standing approximately "35 to 40 feet from the sheriff's dunking booth," watching people throw baseballs at the dunk booth target. As he was watching, someone tapped him on the shoulder. He turned around and saw it was a Plaquemines Parish deputy sheriff—later determined to be Reddoch—who asked for Holmes's identification. Holmes "very calmly asked [Reddoch] why," to which Reddoch only responded "[f]ollow me." Holmes began to comply with the officer's instruction, but then stopped after following Reddoch for a few paces. Reddoch noticed that Holmes had stopped, turned to approach Holmes, and again asked for Holmes's identification. Holmes asked a second time for an explanation, then "got the impression that something was up," and so he "put [his] hands down by [his] side with [his] palms open so [Reddoch] would see that [he] was no threat." Reddoch then "stepped up close" to Holmes's left side, grabbed his wrist, and, as Holmes testified:

> [Reddoch] had me by my left wrist forcefully and he had his other arm across my shoulder blade and the back of my upper arm, my humerus against [his] tricep muscle, and he stepped in front of me. He was on my left. He had ahold of me like this. He put his arm against my shoulder blade, pulled my left arm up and stepped in front of me and tripped me and threw me to the ground.

Once Holmes was face down on the ground, Reddoch "kneeled on [Holmes's] back with all his weight." After other deputies arrived and assisted in handcuffing Holmes, Reddoch escorted Holmes back to the

entrance of the fair. Holmes continued to ask Reddoch why he had been arrested, to which Reddoch replied: "You were taking pictures of children." Holmes was only charged with resisting arrest. Holmes testified that, following his arrest, Reddoch told him: "We're going to throw you in prison and I'm going to tell—make sure all the other prisoners know why you're in[.]"

Holmes filed suit in federal district court, asserting various theories of liability under state and federal law. Pertinent to this appeal, he made claims under the Fourth Amendment for Reddoch's investigatory stop and his arrest of Holmes. On remand from the first appeal in this matter,[4] in which another panel of this court reversed the district court's grant of summary judgment in favor of Reddoch, the case ultimately proceeded to trial. After Holmes finished his case-in-chief, Reddoch moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. With respect to Holmes's federal claims for his unlawful stop and subsequent arrest, the motion was denied. At the close of trial, Holmes and Reddoch filed cross-motions for judgment as a matter of law under Rule 50, which were also denied. The following federal-law claims then proceeded to verdict: (1) unreasonable stop, in violation of the Fourth Amendment, (2) unreasonable arrest, in violation of the Fourth Amendment, (3) excessive force, in violation of the Fourth Amendment, and (4) retaliation for protected speech, in violation of the First Amendment.

The jury found that (1) Reddoch unreasonably stopped Holmes, in violation of the Fourth Amendment, but that he was entitled to qualified immunity; (2) Reddoch unreasonably arrested Holmes, in violation of the

---

[4] *Holmes v. Reddoch*, No. 21-30164, 2021 WL 5913297 (5th Cir. Dec. 14, 2021) (unpublished).

Fourth Amendment, and that qualified immunity did not shield him from liability; (3) Holmes failed to prove his Fourth Amendment excessive force claim by a preponderance of the evidence; and (4) Holmes failed to prove his First Amendment retaliation claim by a preponderance of the evidence. The jury also found in favor of Holmes on his state-law claims of battery, false imprisonment, and malicious prosecution. Reddoch filed a post-verdict motion for a new trial under Rule 59, which the district court denied. Following the district court's entry of judgment in accordance with the verdict, Reddoch timely appealed.

Reddoch appeals the district court's denial of his motions for judgment as a matter of law and for a new trial, primarily challenging whether there was sufficient evidence to support the jury's verdict with respect to Holmes's claims for unlawful investigatory stop and unlawful arrest under the Fourth Amendment, as well as the jury's award of punitive damages under § 1983. He does not contest the jury's verdict as to the state-law claims.

## II. Whether the District Court Erred in Denying Reddoch's Motion for Judgment as a Matter of Law

### A. Standard of Review

We review a district court's denial of a Rule 50 motion for judgment as a matter of law "de novo and appl[y] the same deferential standard as the district court does in reviewing the jury's verdict." *Johnston v. Ferrellgas, Inc.*, 96 F.4th 852, 857 (5th Cir. 2024). "A district court must deny a motion for judgment as a matter of law unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012) (internal quotation marks and citation omitted). The court "must consider all of the evidence in the light most favorable to

the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *Johnston*, 96 F.4th at 857 (citation omitted). Additionally, in conducting such a review, we "credit the non-moving party's evidence and disregard all evidence favorable to the moving party that the jury is not required to believe." *Abraham*, 708 F.3d at 620 (internal alterations accepted) (quoting *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012)). "After a jury trial, [the] standard of review is especially deferential." *Id.* (alteration in original) (quoting *Brown*, 675 F.3d at 477).

"Courts of appeals are 'wary of upsetting jury verdicts' and will do so only if there is no 'substantial evidence' that supports the verdict." *Johnston*, 96 F.4th at 857 (first quoting *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th Cir. 2011), then quoting *Baisden*, 693 F.3d at 499). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000)).

## B. Discussion

On appeal, Reddoch contends that there was insufficient evidence on which the jury could conclude that his investigatory stop and arrest of Holmes were unconstitutional. Reddoch broadly asserts (1) that there was probable cause to arrest Holmes; and (2) that, in the alternative, Reddoch was entitled to qualified immunity. We address each of those assertions in turn.

No. 23-30424

### 1. Whether Reddoch Had Probable Cause to Arrest Holmes[5]

"As a baseline, 'the constitutional claim of false arrest requires a showing of no probable cause.'" *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (brackets omitted) (quoting *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). "Probable cause . . . requires 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (quoting *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018)). The jury rejected Reddoch's contention that he had probable cause to arrest Holmes for any crime. On appeal, Reddoch asserts that the evidence shows that he had probable cause to arrest Holmes for: (1) resisting arrest, in violation of LA. STAT. ANN. § 14:108; and (2) disturbing the peace, in violation of LA. STAT. ANN. § 14:103.[6] Reddoch thus says that the district court erred in denying his Rule 50 motion regarding Holmes's federal false arrest claim because that arrest was predicated on probable cause for Holmes's violation of these state statues.

Louisiana's "resisting arrest" statute states, in pertinent part:

Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual

---

[5] Reddoch also asserts that the jury erred in concluding that the investigatory stop violated the Fourth Amendment. We confine our discussion of this portion of the jury's verdict to whether the district court erred in denying Reddoch's motion for a new trial. This is because the jury ultimately found for Reddoch on the unreasonable investigatory stop claim by concluding that he was entitled to qualified immunity.

[6] Reddoch also maintains that the arrest was supported by probable cause because Holmes had two traffic attachments from Jefferson Parish. The district court limited the admissibility of these traffic attachments to the issue of damages only and did not permit the evidence to be introduced on the issue of probable cause. This pretrial evidentiary ruling is not on appeal. Regardless, the district court did not err in excluding such evidence on the claim, because Reddoch became aware of the traffic attachments only *after* arresting Holmes and taking his ID. That purported justification for arrest is wholly without merit.

acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:

[. . . .]

Refusal by the arrested or detained party *to give his name and make his identity known* to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

La. Stat. Ann. § 14:108(A)–(B)(1), B(1)(c) (emphasis added). It is undisputed that Reddoch approached Holmes at the fair. Reddoch testified that he asked if he could speak with him, to which Holmes responded with an aggressive and expletive-laden refusal. In contrast, Holmes testified that Reddoch had walked up to him and immediately demanded to see his identification, to which Holmes asked: "Why?" On cross-examination, Reddoch testified that Holmes's angry outburst could be heard from approximately 50 feet away. But despite the fact that, according to Reddoch, the purportedly expletive-inflected response from Holmes was made in front of a group of children, and approximately fifty feet away from another officer in the vicinity, no one testified that they heard that alleged exchange. And, Reddoch admitted that he never included Holmes's angry outburst in any incident report. The jury was thus entitled to conclude that Reddoch's testimony was not credible and to accept Holmes's version of events. Under the applicable standard of review, the jury's decision as to which version to believe is entitled to significant deference. *See Abraham*, 708 F.3d at 620 ("We credit the non-moving party's evidence and disregard all evidence

favorable to the moving party that the jury is not required to believe.") (internal quotation marks and brackets omitted).

Accepting, then, that Reddoch walked up to Holmes and immediately demanded his identification, to which Holmes replied, "Why?," Reddoch's assertion that he had probable cause to arrest Holmes for violation of § 14:108 fails. This is because, according to his testimony, Holmes never refused to identify himself—he merely wanted to know why an officer was making that demand. According to the Supreme Court, the Fourth Amendment is not offended when a state statute only requires a detainee to state his or her name. *See, e.g.*, *Hiibel v. Sixth Jud. Dist. Court of Nev.*, 542 U.S. 177, 184–85 (2004) ("[T]he statute does not require a suspect to give the officer a driver's license or any other document. Provided that the suspect either states his name or communicates it to the officer by other means . . . the statute is satisfied and no [Fourth Amendment] violation occurs.") (citing analogous statute from Nevada). And this court has recognized the principle that "the police cannot arrest an individual solely for refusing to provide identification." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th Cir. 2017). Unsurprisingly, § 14:108B(1)(b)-(c) conforms to these precedents, as it only criminalizes the refusal to provide a name *after* being lawfully detained or arrested. According to the jury, relying on Holmes's testimony, Holmes did not refuse to provide his name prior to his arrest. He only asked for an explanation in response to a request that, according to our precedents, he need not have heeded. The jury and the district court reasonably rejected Reddoch's contention that § 14:108(B) provided him with probable cause to arrest Holmes.

Reddoch's second justification—Holmes's purported disturbance of the peace, in violation of La. Stat. Ann. § 14:103—fails for the same reason. Louisiana's disturbance-of-the-peace statute provides, in pertinent part:

Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:

[. . .]

Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by an offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty[.]

§ 14:103(A)(2). When we accept Holmes's version of events, as the jury reasonably did, Holmes's behavior did not provide Reddoch with probable cause to arrest him under this statute. That is because, according to Holmes, Reddoch approached him and immediately demanded that he produce his identification, prompting Holmes to calmly ask why Reddoch was making that request. The jury rejected Reddoch's contention that Holmes launched an angry tirade at Reddoch—a credibility determination that was accepted by the district court in its decision to reject Reddoch's motion for judgment as a matter of law[7] and that we must also accept on appeal. *See Abraham*, 708 F.3d at 620 (observing that the court "disregard[s] all evidence favorable to [the moving party] that the jury is not required to believe").

In sum, Reddoch's contention that the evidence elucidated at trial shows that he had probable cause to arrest Holmes fails. The district court thus did not err in denying Reddoch's Rule 50 motion on these bases.

### 2. Whether Reddoch was Entitled to Qualified Immunity

---

[7] "As the finder of fact in this case, the jury was empowered to weigh the evidence and determine that Holmes did not resist arrest—either physically or by asking 'why' Reddoch was stopping him and asking for his identification."

Alternatively, Reddoch contends that Holmes "failed to meet his burden of overcoming Deputy Reddoch's defense of qualified immunity because he failed to show that Deputy Reddoch violated clearly established law." Thus, says Reddoch, the district court should have granted his Rule 50 motion. Holmes, on the other hand, asserts that Reddoch forfeited the issue of qualified immunity by failing to assert it as a justification in his Rule 50 motion at trial. The issue of Reddoch's entitlement to qualified immunity, says Holmes, was thus properly submitted to the jury. We agree.

"A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion *must specify* the judgment sought and the law and facts that entitle the movant to the judgment." FED. R. CIV. P. 50(a)(2) (emphasis added). When, as here, a district court "does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is *considered to have submitted the action to the jury* subject to the court's later deciding the legal questions *raised by the motion*." FED. R. CIV. P. 50(b) (emphasis added). We have observed that "courts prohibit parties from using a Rule 50(b) motion to assert a ground that was not included in the original motion." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019) (internal quotation marks and brackets omitted); *see also In re Isbell Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014)("Since a Rule 50(b) motion is technically only a renewal of the Rule 50(a) motion for judgment as a matter of law, it cannot assert a ground that was not included in the original motion.") (internal quotation marks, brackets, and alterations omitted); *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 247 (5th Cir. 2005) ("If a party fails to raise an issue in its Rule 50(a)(1) motions at trial, it may not do so in its post-trial Rule 50(b) motion.").

The record confirms that Reddoch did not predicate either of his Rule 50 motions during trial on qualified immunity as to the federal false arrest

claim.[8] Neither does Reddoch explain why—or how—the district court could have erred in denying a motion on a basis that was not raised. The issue was thus properly submitted to the jury, and the district court did not err in denying Reddoch's motion for judgment as a matter of law on that basis.[9]

## III. Whether the District Court Erred in Denying Reddoch's Motion for a New Trial

Reddoch next asserts that the district court erred in denying his motion for a new trial under Federal Rules of Civil Procedure 49 and 59. That is because he claims that the verdict is "irreconcilably inconsistent" as to (1) its conclusions on Holmes's false stop and false arrest claims, and (2) its award of punitive damages under § 1983.

---

[8] The record is ambiguous but ultimately does not favor Reddoch. Both of Reddoch's Rule 50 motions were made orally at trial. In the first, Reddoch moved for judgment for "the claims for malicious prosecution or false arrest." Reddoch did not mention qualified immunity when making the motion. Reddoch mentioned qualified immunity only later in response to a subsequent question from the district court about Holmes's malicious prosecution claim. The district court accordingly granted the motion "as to qualified immunity" on the federal malicious prosecution claim but denied the other claims. Reddoch's second motion then simply renewed the first "motion as previously urged." On appeal, Reddoch also did not state in his brief that he raised qualified immunity in either motion. Reddoch thus did not "specify … the law and facts" entitling him to judgment on the false arrest claim on the basis of qualified immunity as required by Rule 50. Fed. R. Civ. P. 50(a)(2).

[9] To be sure, the determination of whether an officer is entitled to qualified immunity is not the exclusive province of district courts: "[I]n certain circumstances where there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." *Kokesh v. Curlee*, 14 F.4th 382, 391–92 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008)); *see also McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000) (holding that if the district court has not decided the issue of qualified immunity before trial, then "the defense [of qualified immunity] goes to the jury which must then determine the objective legal reasonableness of the officers' conduct"). This is exactly what happened below: the jury was instructed on qualified immunity and decided whether or not Reddoch was entitled to it for each claim.

No. 23-30424

## A. Standard of Review

We review the denial of a motion for a new trial for abuse of discretion. *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 627 (5th Cir. 2018). As we have explained:

> In reviewing such a denial, all the factors that govern our review of the trial court's decision favor affirmance, and we must affirm the verdict unless the evidence—viewed in the light most favorable to the jury's verdict—points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary conclusion.

*Baisden*, 693 F.3d at 504 (internal quotation marks and brackets omitted) (quoting *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 770 (5th Cir. 2009)). Thus, "when the district court has denied a new trial motion," this court's "review is particularly limited." *Cowart v. Erwin*, 837 F.3d 444, 450 (5th Cir. 2016) (quoting *Alaniz*, 591 F.3d at 770).

## B. Discussion

Reddoch argues that the district court erred in denying his motion for a new trial because the verdict is "irredeemably illogical and inconsistent" under Rules 49 and 59. In Reddoch's view, the "issues of reasonable suspicion to detain and probable cause to arrest" are not "distinct causes of action." Reddoch says that "if [he] was reasonable in his belief that his detention of [Holmes] was not unlawful, then he was also reasonable in his belief that his arrest of [Holmes] was lawful." The district court rejected that argument, concluding that the stop and subsequent arrest of Holmes were distinct actions under the Fourth Amendment. We agree.

To begin, Reddoch fails to cite any authority for this contention, so he has forfeited the argument for his failure to adequately brief it. *See* Fed. R.

App. P. 28(a)(8)(A); *United States v. Zuniga*, 860 F.3d 276, 285 n.9 (5th Cir. 2017); *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 & n.27 (5th Cir. 1994). But, even on the merits, Reddoch's argument is inapposite. In essence, he asserts that, because the jury found him to be entitled to qualified immunity for the unreasonable stop, it necessarily follows that he was entitled to qualified immunity for the subsequent arrest. First, the standards for conducting a lawful stop and for conducting a lawful arrest under the Fourth Amendment are different: "Police may detain a suspect and briefly investigate when they have reasonable suspicion, based on specific and articulable facts and rational inferences, that justifies the intrusion. This standard is less stringent than the probable cause standard required for a full arrest." *United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013) (internal citation omitted); *see also United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008) ("Reasonable suspicion requires less information and certainty than the probable cause needed to make an arrest.").

Second, we recognize that an unlawful stop and an unlawful arrest are independent causes of action under § 1983. *See Brown v. Bryan Cnty.*, 67 F.3d 1174, 1180 (5th Cir. 1995), *vacated on other grounds sub nom.*, *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997) ("Assuming *arguendo* that the deputies had a reasonable suspicion to perform an investigatory stop, we nevertheless find the evidence sufficient to support the jury's finding that [the officer] did not have probable cause to arrest [petitioner], and that his doing so violated her constitutional right to be free from false arrest."). When viewing the evidence in the light most favorable to the verdict, the jury's conclusions make sense: Although Reddoch's investigatory stop of Holmes to discuss a complaint he had received about a man allegedly taking photographs of children at the fair was not supported by reasonable suspicion, Reddoch was reasonable in his belief that the investigatory detention was lawful (put differently, he was entitled to qualified immunity).

However, he unlawfully arrested Holmes, and he was *unreasonable* in his belief that he could effect a lawful arrest of Holmes for any crime. Thus, the district court did not abuse its discretion when it denied Reddoch's motion for a new trial on that basis.

Finally, Reddoch argues that the district court erred in denying his motion for a new trial because the jury's award of punitive damages under § 1983 was inconsistent with its determination that Reddoch was entitled to qualified immunity for his stop of Holmes. Reddoch avers that this was error because (1) the jury's determination that Reddoch's stop of Holmes was shielded by qualified immunity necessarily means that Reddoch's "motivations" could not be "evil, reckless, or callous," as required for an award of punitive damages; and (2) Reddoch's entitlement to qualified immunity for the stop compels the conclusion that he was immune for the arrest as well, and so there is no basis to award punitive damages under § 1983. Therefore, says Reddoch, the district court should have granted his motion for a new trial.

"A jury may award punitive damages in a § 1983 action when an official's conduct is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Cowart*, 837 F.3d at 455 (quoting *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994)). Punitive damages in § 1983 actions are designed not only to deter the official in question from future unlawful conduct, but also to deter those other officials who are similarly situated. *See id.* at 456. "Finally, the 'discretionary moral judgment' of whether to award punitive damages when the legal threshold is met belongs to the jury, not this court." *Id.* (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)).

Even putting aside the fact that Reddoch forfeited this argument because he failed to cite any authority in support of his theories for why

15

punitive damages were inappropriate, *see L & A Contracting Co.*, 17 F.3d at 113 & n.27, his contentions are meritless. First, Reddoch's argument about his immunity to liability for the investigatory stop of Holmes ignores entirely Reddoch's actions during and after the arrest.[10] For example, Reddoch knew that taking pictures of children at the fair was not a crime, but told Holmes: "We're going to throw you in prison and I'm going to tell—make sure all the other prisoners know why you're in." Taking the evidence together, the jury was entitled to draw the inference that Reddoch manufactured the charges of resisting arrest and breach of the peace as post-hoc rationalizations for his arrest of Holmes. In sum, there was a sufficient evidentiary basis to conclude that Reddoch acted with at least "reckless or callous indifference" to Holmes's constitutional rights. *See Cowart*, 837 F.3d at 455. Therefore, the jury did not abuse its discretion by awarding punitive damages under § 1983 for Reddoch's false arrest of Holmes on this basis.

For his second assignment of error to the jury's award of punitive damages, Reddoch merely reasserts the argument that, because the jury found that he was entitled to qualified immunity for the investigatory stop, he was necessarily entitled to qualified immunity for his arrest of Holmes. Reddoch thus says that, because both of the § 1983 claims for which he was found liable are properly barred by qualified immunity, punitive damages were inappropriate. For the same reasons explained above, we reject this argument.

---

[10] Once again, this contention seeks to conflate the investigatory stop and the subsequent arrest as one event for Fourth Amendment purposes.

No. 23-30424

## IV. Conclusion

Reddoch offers no persuasive reason for disturbing the jury's verdict, the propriety of which we must afford a high degree of deference. The judgment of the district court is therefore AFFIRMED.